# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JOHN DOE; and JANE DOE,

    Plaintiffs,

v.                                                  Case No. 6:21-cv-1566-RBD-RMN

MAGICAL CRUISE COMPANY,
LTD.,

    Defendant.
_____

## ORDER

Before the Court is Defendant's motion for summary judgment. (Doc. 72.) The motion is due to be granted.

## BACKGROUND

In January 2020, Plaintiffs were taking a family vacation on Defendant's cruise ship with their three-year-old daughter, R.V., and her seventeen-year-old half-sibling, A.M. (from the mother's previous marriage). Plaintiffs assert that while R.V. was in daycare on the ship, another minor girl sexually assaulted her. The incident was captured on video. (*See* Docs. 7, 23.)

In the video, R.V. is shown lying down in a play area watching a movie with several other children, including a girl around seven dressed in a Princess Leia costume ("P.L."). At one point after R.V. goes to the bathroom, P.L. brings her to

one of Defendant's employees, as R.V. appears to be upset. R.V. later goes back to the play area and lays on the floor with several children. Multiple children pat R.V. on the back and appear to be consoling her at various times. P.L. then lays down next to R.V., cradling her as they both watch the screen. P.L.'s right hand rests loosely on R.V.'s abdomen, with her left hand propping herself up on her elbow. Other children remain in the room at all times; one of Defendant's employees also briefly steps into the room during the time in question. R.V. was wearing a dress with shorts underneath. The video does not show P.L.'s hand go under R.V.'s clothes, nor does it show her touch R.V.'s genitals. About ten minutes later, they go to a different room, where P.L. seemingly asks another employee to comfort R.V., and the employee picks R.V. up and hugs her. (Doc. 23 (6:07:01–6:46:03, specifically, 6:27:11–6:28:30).)

R.V. did not tell anyone at the time that she was allegedly assaulted. When R.V.'s mother came to pick her up from daycare, P.L. told her that she found R.V. crying in the bathroom and she brought R.V. to an employee. A day later, R.V. told her mother that her genitals hurt; her mother saw a little blistering and redness in the area, but thought R.V.'s bathing suit was too tight. (Doc. 72-6, pp. 60:17–62:16, 99:22–100:11, 226:16–227:3.)

Over a month after the family returned from the cruise, R.V. told her father that her sibling A.M. touched R.V.'s private parts "all the time." R.V.'s mother did

2

not believe her, but R.V.'s father (A.M.'s stepfather) did. So the family went to the police, which investigated alongside the Department of Children and Families. When interviewed, R.V. was asked if A.M. had touched her private parts, and she said she did not want to answer. When R.V. was asked where the incident happened, she said it was on an airplane in the bathroom. When R.V. was asked where A.M. touched her, she pointed to her genitals. A.M. ultimately was not charged and moved out of the house soon after. (*See* Doc. 72-6, pp. 9:3–6, 45:21–60:15, 77:15–78:9, 100:19–23, 103:10–138:17, 152:1–11; Doc. 72-7, pp. 141:8–196:20, 201:10–202:25.)

In the aftermath of the A.M. investigation and based on various snippets of what R.V. told them, Plaintiffs pieced together their belief that R.V. had been assaulted on the ship. At first, they believed R.V. may have been assaulted by a ship employee with the same name as her sibling, which they later determined was not the case. They eventually viewed the video and came to the belief that P.L. assaulted R.V. during the window between 6:27:11 and 6:28:30 p.m.—though R.V. never explicitly said P.L. touched her private parts on the ship. Law enforcement then viewed the video, and they concluded that no sexual assault occurred. (*See* Doc. 23 (6:27:11–6:28:30); Doc. 72-6, pp. 28:8–14, 140:3–143:10, 144:16–147:1, 148:13–151:22, 166:22–167:7; Doc. 72-7, pp. 70:10–20, 72:6–14, 168:1–169:5, 181:11–183:5, 195:21–196:5, 198:9–16, 213:2–223:21, 243:10–244:1, 250:4–8, 251:1–4, 254:2–

256:15.)

Plaintiffs then sued Defendant for various negligence-based claims for failing to protect their daughter R.V. from the alleged sexual assault by P.L. on the ship. (Doc. 7.) Before the pleadings closed, Defendant filed an early motion for summary judgment based on the video. (Doc. 17.) The Court reviewed the video (*see* Doc. 23) and held a hearing on the matter (Doc. 37). At the hearing, the Court expressed the view that the video did not show the assault Plaintiffs claimed, but nevertheless denied summary judgment without prejudice at that stage, noting that further discovery—such as deposing the employees who talked to R.V. while she was crying—could support an argument that something happened outside what was shown on the video. (*See id.* at 7:14–23, 9:2–6, 16:12–21, 19:3–23; *see also* Doc. 46.)

Following the close of discovery, Defendant now renews its motion for summary judgment. (Doc. 72; *see* Doc. 85.) Plaintiffs' opposition remains insistent that the assault took place on the video, despite the Court's earlier caution that its review did not show what they claimed. (Doc. 81.) Both sides also move to exclude each other's experts. (Docs. 73–77; *see* Docs. 78, 79, 82–84.) The matters are ripe.

## STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

4

as a matter of law." Fed. R. Civ. P. 56(a). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). Then the court must decide whether there is "sufficient disagreement to require submission to a jury." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (cleaned up).

## ANALYSIS

Plaintiffs assert solely that the video shows the sexual assault occurring between 6:27:11 and 6:28:30 p.m.—specifically, in the six seconds from 6:27:12 to 6:27:18 p.m.; they do not argue that R.V. was assaulted in any other portion of the video or off-camera. (Doc. 81, pp. 3, 6, 9–12; *see* Doc. 23 (6:27:11–6:28:30).) Defendant renews its argument that the video conclusively shows that no such assault occurred. (Doc. 72, pp. 10–14.) Plaintiffs counter that the Court already found the video was not conclusive, so their claims survive. (Doc. 81, pp. 9–12.)

Plaintiffs misapprehend the Court's earlier ruling. While, out of an abundance of caution, the Court declined to enter an early summary judgment based on the video before the pleadings closed or any discovery occurred, the Court clearly warned Plaintiffs that the video did not show any sexual assault. (Doc. 37, p. 16:12–21.) As the entirety of the hearing transcript indicates, the Court urged Plaintiffs to seek discovery that could support their claim outside of the

video, such as testimony from the employees that R.V. reported a sexual assault that may have happened off-camera. (*See id.* at 7:14–23, 9:2–6, 19:3–23.) But the Court's view is, and always has been, that the video itself does not show a sexual assault. (*Id.* at 16:12–21.) This is why the Court explicitly cautioned Plaintiffs to focus their discovery on evidence that could contradict or expand on the video, as that was not enough to prove the sexual assault.[1] (*See id.* at 19:3–23.) Instead, Plaintiffs doubled down on limiting their claim to the video, simply lining up experts to try to convince the Court that the video shows something it does not. (Doc. 81, pp. 10–12.)

Now that discovery is complete and Plaintiffs have expressly limited their claim to the few seconds of video in question, the Court is confident in concluding that no reasonable jury could find that a sexual assault occurred in the video.[2] (*See* Doc. 23 (6:27:11–6:28:30).) Where a video "obviously contradicts" a plaintiff's version of the facts, courts must accept the video's depiction. *See Pourmoghani-*

---

[1] This is what the Court meant in its brief Order memorializing the oral rulings from the hearing in saying that the video was "not necessarily conclusive" of whether a sexual assault occurred at the motion to dismiss stage—not that the video itself was ambiguous, but rather that the Court could see the potential for other discovery to prove that an assault had occurred outside what was seen on the video. (*See* Doc. 46.) This view was made clear in the full hearing transcript. (*See* Doc. 37.)

[2] The Court does not need experts to tell it what happened in the video, so the *Daubert* motions are moot. (Docs. 73–77); *see Hibiscus Assocs. Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is . . . not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.").

6

*Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010). Here, the Court's exhaustive, frame-by-frame review of the video footage shows conclusively that no sexual assault occurred when and by whom Plaintiffs claim. (*See* Doc. 23 (6:27:11–6:28:30)); *e.g. Donnelly v. Wal-Mart Stores E., LP*, 844 F. App'x 164, 169 (11th Cir. 2021). The video shows innocent and normal casual touching and comforting between children. With no evidence of sexual assault by P.L. in Defendant's daycare,[3] Plaintiffs cannot succeed on their claims that Defendant was negligent in failing to protect their daughter. *See Fuentes v. Classica Cruise Operator Ltd*, 32 F.4th 1311, 1316 (11th Cir. 2022). So Defendant is entitled to summary judgment.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendant's motion for summary judgment (Doc. 72) is **GRANTED**.

2. The *Daubert* motions (Docs. 73–77) are **DENIED AS MOOT**.

3. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiffs, terminate all deadlines, and close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 27, 2023.

---

[3] The sole piece of evidence Plaintiffs point to other than the video is the mother seeing redness on R.V.'s genitals a day later. (Doc. 81, p. 10.) But even taking this as true and construing it in the light most favorable to Plaintiffs, it does not contradict the video, which plainly shows that no sexual assault occurred when and by whom Plaintiffs claim. (*See* Doc. 23 (6:27:11–6:28:30).) So the mother's testimony does not raise a genuine issue of material fact to overcome the video and get past summary judgment. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098, 1102 (11th Cir. 2018).


ROY B. DALTON JR.
United States District Judge